T.C. Memo. 2010-68


UNITED STATES TAX COURT


RICHARD ENRIQUE ULLOA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 2053-09, 4514-09.    Filed April 6, 2010.


        P received wages and other income in 2003-2006
from third-party payers who reported the income to the
IRS.  P filed untimely "zero returns", reporting no
income and no tax liability.  Pursuant to I.R.C.
sec. 6020(b), R prepared substitutes for returns for
2003-2006 on the basis of the third-party payer
information and issued notices of deficiency
determining taxes owed and additions to tax under
I.R.C. secs. 6651(a)(1) and (2) and 6654(a).  P filed
petitions and contends that the third parties are not
"valid payers" because they do not reside in Puerto
Rico, the Virgin Island, Guam, or American Samoa, see
I.R.C. sec. 3121(e)(2), and that therefore he owes no
income tax.  P and R cross-moved for summary judgment.

        <u>Held</u>:  R is entitled to summary judgment as to P's
liability for income tax on his wages and other income
and his liability for additions to tax under I.R.C.
sec. 6651(a)(1) and (2) for all 4 years 2003-2006.

Held, further:  R is entitled to summary judgment as to P's liability for the I.R.C. sec. 6654(a) addition to tax for 2004-2006 but not for 2003.

Held, further:  A penalty of $5,000 will be imposed against P under I.R.C. sec. 6673 for his maintaining frivolous positions.

Richard Enrique Ulloa, pro se.

Jessica Browde, for respondent.

MEMORANDUM OPINION

GUSTAFSON, Judge:  The Internal Revenue Service (IRS) issued to petitioner Richard Enrique Ulloa four statutory notices of deficiency pursuant to section 6212,[1] showing the IRS's determination of the following deficiencies in income tax and accompanying additions to tax for failure to file under section 6651(a)(1), failure to pay under section 6651(a)(2), and failure to pay estimated taxes under section 6654 for tax years 2003 through 2006:

---

[1]Unless otherwise indicated, all citations of sections refer to the Internal Revenue Code of 1986 (26 U.S.C.), as amended, and all citations of Rules refer to the Tax Court Rules of Practice and Procedure.

|  |  | Additions to Tax | | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2003 | $22,515 | $2,257.43 | $2,508.25 | $223.10 |
| 2004 | 63,486 | 12,891.60 | 11,745.68 | 1,622.23 |
| 2005 | 19,603 | 4,410.68 | 2,842.44 | 786.32 |
| 2006 | 28,217 | 4,490.55 | 1,696.43 | 901.06 |

Mr. Ulloa brings this case pursuant to section 6213(a), asking this Court to redetermine those deficiencies and additions to tax. The case is currently before the Court on the parties' cross-motions for summary judgment. For the reasons explained below, we will deny Mr. Ulloa's motion, grant respondent's motion in large part, and impose on Mr. Ulloa a penalty pursuant to section 6673(a).

## Background

The following facts are based on Mr. Ulloa's pleadings and other filings in this case and on the assertions in respondent's motion papers that are supported in accordance with Rule 121 and as to which Mr. Ulloa did not raise any genuine issue of material fact. At the time he filed his petitions, Mr. Ulloa claimed an address in New York State.

## Mr. Ulloa's Income

In 2003 Mr. Ulloa received wages totaling $104,424--i.e., $99,224 from Candle Corporation and $5,200 from another payer named Richard Ulloa, perhaps a relative. From those wages only $12,482 had been withheld as Federal income tax. Federal

Insurance Contributions Act tax (FICA tax) was also withheld from his wages, pursuant to sections 3101 and 3102. He also received in 2003 rental income of $2,538 from Almar Rentals.

In 2004 Mr. Ulloa received wages totaling $131,449--i.e., $73,031 from Candle Corporation, $54,018 from IBM, and $4,400 from the other Richard Ulloa. From those wages only $6,190 had been withheld as Federal income tax. He had submitted to IBM in 2004 a Form W-4, Employee's Withholding Allowance Certificate, reporting himself exempt from income tax withholding. This submission presumably accounts for the small amount of income tax withholding ($3,371) from his IBM wages. The record does not show his Form W-4 submission to Candle Corporation. FICA tax was also withheld from his wages. Mr. Ulloa also received in 2004 proceeds of $105,000 from the sale of real estate in Florida (as reported on Form 1099-S, Proceeds From Real Estate Transactions, by American United Title Company), interest income of $38, and qualified dividends of $11.

In 2005 Mr. Ulloa received wages totaling $97,680--i.e., $96,580 from IBM and $1,100 from the other Richard Ulloa. FICA tax was withheld from his wages, but zero Federal income tax was withheld. Mr. Ulloa submitted to IBM in November 2004 a Form W-4 reporting 20 allowances;[2] and that submission and his prior claim

---

[2]Under section 3402(f) an employee may claim exemptions for himself, his spouse, and his dependents that reduce the amount of
(continued...)

of being exempt from withholding apparently account for the non-withholding from his IBM wages. He also received in 2005 interest income of $70 and qualified dividends of $100.

In 2006 Mr. Ulloa received wages from IBM totaling $110,794. Beginning in July 2006, he submitted a series of Forms W-4 on which he first claimed 99 allowances, then claimed 4 allowances, then claimed 5 allowances, and then (in late November) claimed to be exempt from withholding. However, on August 31, 2006, the IRS instructed IBM to withhold tax on the basis of three allowances, and IBM informed Mr. Ulloa that a change to three allowances would be reflected in his pay statement of October 1, 2006. From his 2006 IBM wages, $8,259 was withheld as Federal income tax. FICA tax was also withheld from his wages. Mr. Ulloa also received in 2006 profits from the sale of securities of $15,483, distributions from a partnership of $2,893, and interest income of $63.

Mr. Ulloa's Submissions to the IRS

Mr. Ulloa did not file a timely Federal income tax return for any of the years 2003 through 2006. It was not until February 2007 that Mr. Ulloa submitted to the IRS purported returns for 2003 (on Form 1040X, Amended U.S. Individual Income

_____

[2](...continued)
income tax withholding. Under section 3402(m) an employee may further reduce his Federal income tax withholding by claiming "allowances" that correspond to his estimated deductions and credits for the year.

Tax Return) and for 2004 and 2005 (on Form 1040, U.S. Individual Income Tax Return); and in June 2007 he submitted to the IRS a purported return for 2006 (on Form 1040).  Each of the purported returns reported zero income and zero tax liability.  Each of the purported returns claimed a refund resulting from "Excess social security * * * tax withheld", in an amount that was equal to or greater than the entire withholding of the "social security" portion of FICA tax (under section 3101(a)) and that, for 2003 and 2005, apparently included the "hospital insurance" or Medicare portion of FICA tax (under section 3101(b)), although the amount claimed does not correspond precisely to the withholding as reported by the payers.

On the Form 1040X for 2003, Mr. Ulloa gave the following "Explanation of Changes to Income, Deductions, and Credits":

> Line 1.  Original W-2 Forms attached to our submission of 2004[3] Form 1040 were in error.  No IRC section 3401(a) "Wages" were received by either party affiliated with either this or the original return.

> Need I explain the changes that occur to Lines 3, 5, 6, and 10 through the application of basic math and reading comprehension skills?

---

[3]Mr. Ulloa's Form 1040X refers to a prior "submission of 2004", as if he were filing an amended return for 2004, not 2003; and Form 1040X is the form used for an amended return.  However, the record shows no evidence (and Mr. Ulloa makes no allegation) that any form (such as Form 1040) was submitted for 2003 before the Form 1040X, and the Form 1040X for 2003 does claim a refund of income tax withholding in an amount that was actually withheld for 2003.  We therefore conclude that the Form 1040X was submitted for 2003, as it states.

To each of the purported returns Mr. Ulloa attached one or two Forms 4852, Substitute for Form W-2, Wage and Tax Statement, on which he reported that he had received an "incorrect" Form W-2 from Candle Corporation in 2003, from IBM in 2005 and 2006, and from both payers in 2004. On the Forms 4852 he stated amounts of income tax, Social Security tax, and Medicare tax as having been withheld, and the amounts approximate those that the payers reported on Forms W-2. However, on the Forms 4852 Mr. Ulloa left blank lines 7a ("Wages, tips, and other compensation"), thus indicating his position that the correct wage amounts were zero, rather than the substantial amounts that the payers had reported.

Administrative Action

The IRS did not treat Mr. Ulloa's zero returns as proper tax returns. Rather, pursuant to section 6020(b), the IRS prepared for Mr. Ulloa (and an IRS official signed) a substitute for return (SFR) for 2003 on August 29, 2008, and SFRs for 2004, 2005, and 2006 on September 2, 2008. The IRS then issued, in October and November 2008, separate notices of deficiency to Mr. Ulloa for 2003, 2004, 2005, and 2006. The SFRs and the notices of deficiency all treated as income to Mr. Ulloa the amounts reported by his employers and other third-party payers.

Proceedings in This Court

Mr. Ulloa timely filed petitions in this Court challenging the deficiencies and additions to tax for all four years:  his petition for 2003, 2005, and 2006 in docket No. 2053-09 and his petition for 2004 in docket No. 4514-09.  The Court consolidated the cases by order and served notice that the cases were scheduled to be tried at the session beginning January 11, 2010, in New York City.

On December 8, 2009, respondent filed in each case a motion for summary judgment and for imposition of a penalty under section 6673(a).  The Court then issued its order of December 14, 2009, which stated in part as follows:

> On December 8, 2009, respondent filed motions for summary judgment in each of the two consolidated cases. Without prejudging the motions, the Court advises petitioner Richard Enrique Ulloa that, if the motions are correct, it appears that Mr. Ulloa has made frivolous arguments in this case.  The Court warns Mr. Ulloa that if this is correct, and if he persists in making frivolous arguments, then he will be liable for a penalty of up to $25,000 pursuant to 26 U.S.C. sec. 6673.
>
> In view of the foregoing, it is
>
> ORDERED that, no later than December 28, 2009 (which is also the due date for exchange of exhibits and submission of pretrial memoranda identifying witnesses), Mr. Ulloa shall file with the Court and serve on respondent a response to respondent's motions for summary judgment.  It is further
>
> ORDERED that respondent's motions for summary judgment will be the subject of a hearing at the trial calendar to be called at the Court's session commencing January 11, 2010, in New York City, New York.

Mr. Ulloa filed an opposition and his own cross-motion for summary judgment in each case on December 31, 2009. Each of his oppositions states, "I respectfully request the indulgence of this court as I am not schooled in law. This is provided by the precedent set by Haines vs. Kerner at 404 U.S. 519."[4] Each of his motions begins--

> Comes now Richard-Enrique Ulloa, Secured Party-Creditor, by special visitation and not appearing generally, before this court seeking a remedy in Admiralty as is provided by "The Saving to the Suitors Clause" at USC 28-1333(1).[5] I am standing in my unlimited commercial liability as a Secured Party-Creditor and request that the officers of this court do the same. * * *
>
>        *     *     *     *     *     *     *
>
> [T]he Respondent has not proved that the Documents purporting to be w-2's have a valid payer, or were issued by a valid payer. * * * [S]ince the one and only issue that needed addressing was and is the purported w-2 documents and was NEVER RESPONDED to by the Respondent, therefore making my case that the purported W-2 are not valid documents, and therefore the Service cannot procedurally move into an Examination and issue a Deficiency. You cannot collect two hundred dollars without passing Go, or get to taxes, income and wages unless you address this, basic

---

[4]Mr. Ulloa also repeats his mantra that he is "not schooled in the law" in (a) an unagreed "Stipulation of Facts" that he submitted unilaterally and that the Court filed as his pretrial memorandum on December 31, 2009; (b) his affidavits in support of his cross-motions for summary judgment, filed December 31, 2009; and (c) an objection, filed January 4, 2010, to the affidavit submitted in support of respondent's motions for summary judgment. The case he cites--Haines v. Kerner, 404 U.S. 519 (1972)--is discussed below in part IV.

[5]Title 28 U.S.C. section 1331(1) (2006) gives jurisdiction only to the Federal District Courts, and not to the Tax Court.

document issue, which thus far, Respondent FAILED to address and has avoided.

With his motions Mr. Ulloa submitted papers showing that the entities that had paid him wages and other income amounts in the years at issue were authorized to do business in New York and California--evidently making them, in his view, not "valid payers". His papers included his own affidavits, which state:

8.  As a **non-privileged private-sector**[6] worker, I received NOTHING in the way of "wages," as defined at IRC Section 3401(a). I am sure you are well aware that Form 4852 entitled, in pertinent part, "Substitute for Form W-2, Wage and Tax Statement," is the IRS's own form for correcting erroneous information returns purporting as W-2's.

9.  I deny participating in any activity as an officer or employee of a corporation,[7] or a member or employee of a partnership, or as any other individual in an enterprise, who as such officer, employee, member, or other individual in an enterprise is under the duty to perform the act of filing tax returns.

10.  I deny participating in any activity as an officer or employee of a corporation, or a member or employee of a partnership, or as any other individual in an enterprise, who as such officer, employee, member, or other individual in an enterprise that makes my [sic] liable for any tax on income.

---

[6]Mr. Ulloa's identification of himself as a "private-sector worker" evidently alludes to the frivolous position that only Federal employees are subject to income tax. See Rev. Rul. 2006-18, 2006-1 C.B. 743.

[7]Mr. Ulloa's denial of participation in a corporation, partnership, or enterprise may be an allusion to the frivolous argument that an individual is not a person subject to tax. See Rev. Rul. 2007-22, 2007-1 C.B. 866. In any event, such participation is not a precondition to income tax liability.

11. I expressly reserve the *exclusive* right to determine the value of my time,[8] and other of my valuable resources, for any purpose whatsoever at any time in the future * * *.

The Court and the parties held a telephone conference on January 5, 2010, and these cases were called from the calendar on January 11, 2010, at which time the Court heard argument on the parties' cross-motions for summary judgment. Respondent argued that Mr. Ulloa should be held liable for tax on his wages and other income reported to the IRS by the payers and liable also for the additions to tax. Mr. Ulloa argued:

> [I]f you go by the definition on Section 3121, okay, of 26 USC, there are several tests that have to meet that criteria for an American employer, okay? So none of those tests are met by these companies [i.e., Mr. Ulloa's employers and other payers].
>
> So that's the only argument that I'm bringing into -- and they [i.e., the IRS] haven't proved otherwise

---

[8]Mr. Ulloa's assertion about the value of his time evidently alludes to the frivolous position that a wage earner is allowed a deduction for his basis in his time and effort, measured by its value. See Carskadon v. Commissioner, T.C. Memo. 2003-237 ("Petitioners assert that petitioner's wages are not taxable because the Code, which states exactly what is taxable, does not specifically state that 'time reimbursement transactions', a term of art coined by petitioners, are taxable. However, the Code does not limit gross income to the list provided in section 61(a). Gross income means all income from whatever source derived. Sec. 61(a). Petitioners' arguments completely disregard the definition of gross income"). Courts have consistently held that compensation for services rendered constitutes taxable income and that taxpayers have no tax basis in their labor. Carter v. Commissioner, 784 F.2d 1006, 1009 (9th Cir. 1986); Olson v. United States, 760 F.2d 1003, 1005 (9th Cir. 1985); United States v. Romero, 640 F.2d 1014, 1016 (9th Cir. 1981); Abrams v. Commissioner, 82 T.C. 403, 407 (1984); Rowlee v. Commissioner, 80 T.C. 1111, 1119-1122 (1983).

that this section of code and that these companies are either an American vessel or American aircraft [or] even within the United States.  They haven't defined what the United States means.

His reference to American vessels and aircraft relates to section 3121(f), and his complaint that the IRS had not "defined what the United States means" refers to section 3121(e)(2), which he then cited:

> MR. ULLOA:  Well, sub-section (a) is -- defines wages, sub-section (b) defines employment, sub-section (e)(2) defines the United States and section (f) defines an American employer.
>
> THE COURT:  So (e)(2) is what you're relying on?
>
> MR. ULLOA:  (e)(2) is the United States, right.
>
> THE COURT:  Okay.  It says, the term United States when used in a geographical * * * [sense], includes the Commonwealth of Puerto Rico, The Virgin Island, Guam, and American Samoa.
>
> MR. ULLOA:  Exactly.  * * * It includes that just those are considered the United States.
>
> THE COURT:  So you say that the word "includes" there means includes only --
>
> MR. ULLOA:  Only those, right.
>
> THE COURT:  All right.  That is a frivolous position that's been rejected over and over by the courts.  Do you have anything else you want to say?
>
> MR. ULLOA:  Well, that is my argument and that's, as far as I'm concerned, if -- you know, we had a conversation, a pre-trial conversation [on January 5, 2010], and * * * you were biased about that whole situation * * *.  * * *  I considered your statement biased because it's not a frivolous argument.

Mr. Ulloa then engaged in this colloquy with the Court:

     THE COURT:  * * *  [I]f you're granted a trial, will you be testifying that you did not receive that money?

     MR. ULLOA:  No, I'll be testifying that they are not an American company.

     THE COURT:  So you admit that you received the money?

     MR. ULLOA:  That's irrelevant, Your Honor.

     THE COURT:  Well, no, I --

     MR. ULLOA:  We're not saying we received money or didn't receive money.  The only thing we're questioning is the document itself. * * *

     THE COURT:  What I'm questioning now is, did you receive that money from those payors?

     MR. ULLOA:  I can't say that.

     THE COURT:  Pardon me?

     MR. ULLOA:  I can't say that.

     THE COURT:  What do you mean you can't say that?

     MR. ULLOA:  That's a private matter.  I mean whether I did or not doesn't matter at all.  The document is what matters, what the document says.

     THE COURT:  Well, what matters is the fact about how much income you received that year.  That's what I have to find.  And unless you intend to show that you didn't receive the money, then I have no basis for finding in your favor.  What you want to prove instead is that you have a quibble with the paperwork.  But since you're not going to disprove that you received the money * * * I don't know how I could find in your favor even if we agreed that we didn't like the paperwork.

     MR. ULLOA:  Then, Your Honor, then you have to rule for them and I'll bring it up on appeal.

The Court then took the parties' motions under advisement.

## Discussion

I.  Summary Judgment Standards

Where the pertinent facts are not in dispute, a party may move for summary judgment to expedite the litigation and avoid an unnecessary trial.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Rule 121 provides for summary judgment in terms equivalent to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment may be granted where there is no genuine issue as to any material fact, and a decision may be rendered as a matter of law.  Rule 121(a) and (b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988).  The party moving for summary judgment bears the burden of showing that there is no genuine issue as to any material fact, and factual inferences will be drawn in the manner most favorable to the party opposing summary judgment.  Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).  However, Rule 121(d) provides:

> When a motion for summary judgment is made and
> supported as provided in this Rule, an adverse party
> may not rest upon the mere allegations or denials of
> such party's pleading, but such party's response, by
> affidavits or as otherwise provided in this Rule, must
> set forth specific facts showing that there is a
> genuine issue for trial. * * *

In compliance with Rule 121(b), respondent made and supported a showing that Mr. Ulloa received income reported to the IRS by his employers and other payers. Mr. Ulloa opposed the motion but did not controvert the facts. The Court specifically encouraged him to do so during the telephone conference of January 5, 2010; and at the hearing on January 11, 2010, the Court asked Mr. Ulloa whether he had received the money reported by the payers. Mr. Ulloa declined to make any assertion about his receiving or not receiving the money because "[t]hat's a private matter".

Respondent's statement of facts is therefore uncontroverted and is accepted for purposes of ruling on the motion, leaving us to decide whether Mr. Ulloa is exempt from tax on the money he received because the entities that paid him were, he says, not "valid payers".

II. Mr. Ulloa's Motion for Summary Judgment

Mr. Ulloa argues that the IRS's determination of tax deficiencies must not be sustained because respondent has not shown that the Forms W-2[9] reporting the income were submitted by "valid payers"--with "valid" evidently meaning in the "United States" as defined in section 3121(e)(2). The definition of

[9]One of the largest income items at issue here is proceeds of $105,000 that Mr. Ulloa received in 2004 from the sale of real estate in Florida, as reported by American United Title Company. The proceeds were reported not on Form W-2 but on Form 1099-S, and a real estate sale transaction would not implicate an employment relationship pertinent to section 3121.

"employment" in section 3121(b) uses the phrases "within the United States", "of the United States", and "in the United States"; and section 3121(e)(2) provides that--

> (2) United States.--The term "United States" when used in a geographical sense <u>includes</u> the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa.  [Emphasis added.]

Mr. Ulloa proposes that "includes" here means "includes <u>only</u>", so that for tax purposes "the United States" fails to include the 50 States that actually constitute the United States.

This is a thoroughly discredited and frivolous argument. See <u>United States v. Collins</u>, 920 F.2d 619, 629 (10th Cir. 1990) (citing <u>Brushaber v. Union Pac. R.R.</u>, 240 U.S. 1, 12-19 (1916), and noting that the Supreme Court has recognized that the "sixteenth amendment authorizes a direct nonapportioned tax upon United States citizens throughout the nation, not just in federal enclaves"); Rev. Rul. 2006-18, 2006-1 C.B. 743.  Section 3121 pertains to employment taxes[10] (which are not at issue in this case involving a deficiency in income tax); and, to state the obvious, section 3121(e)(2) simply clarifies that the "United States" does <u>include</u>, for employment tax purposes, areas that might not otherwise be thought to fall within the United States

---

[10]Section 3121(e) provides that its definitions are "[f]or purposes of <u>this chapter</u>" (emphasis added)--i.e., chapter 21 (Federal Insurance Contributions Act, sections 3101-3128).  An equivalent definition appears in section 3306(j) for purposes of chapter 23 (Federal Unemployment Tax Act, sections 3301-3311).

(Puerto Rico, the Virgin Islands, Guam, and American Samoa).  The definition does not thereby exclude the 50 States from the United States.

Mr. Ulloa's motion must be denied.

III.  Respondent's Motion for Summary Judgment

A.    Income Tax

Mr. Ulloa's legal theory has no merit, and he must pay income tax on his income.  As we noted above in part I, respondent supported his assertions that Mr. Ulloa received money from employers and others, and Mr. Ulloa did not even deny the assertions, much less submit evidence to raise any genuine issue of material fact.

Mr. Ulloa does not cite section 6201(d), but it bears mention here, where the sufficiency of third-party payer information is at issue.  The statute reads:

> In any court proceeding, if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return filed with the Secretary under subpart B or C of part III of subchapter A of chapter 61 by a third party and the taxpayer has fully cooperated with the Secretary (including providing, within a reasonable period of time, access to and inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested by the Secretary), the Secretary shall have the burden of producing reasonable and probative information concerning such deficiency in addition to such information return.

Id.  This case does involve information reported on "information return[s]" from third parties, such as IBM and Candle

Corporation.  If Mr. Ulloa had successfully invoked section 6201(d), then respondent could not have prevailed by relying on the third-party reporting but would also have been required to "produc[e] reasonable and probative information concerning such deficiency in addition to such information return".[11]

But section 6201(d) does not help Mr. Ulloa.  The statute applies only if the "taxpayer asserts a <u>reasonable dispute</u> with respect to any item of income".  (Emphasis added.)  Mr. Ulloa does not dispute that he received the income; on that critical point he is silent.  He makes only a frivolous argument--by definition, not a "reasonable dispute"--and thus cannot successfully invoke section 6201(d).  His receipt of income has been supported as Rule 121 requires and has not been effectively disputed, and he is liable for tax on that income.

B.   <u>Additions to Tax</u>

Pursuant to section 7491(c), the Commissioner bears the burden of production and must produce sufficient evidence showing

---

[11]Because Mr. Ulloa fails to meet the threshold requirement for invoking section 6121(d), we do not reach the issue of whether, if he could invoke it, respondent could nevertheless carry the "burden of producing reasonable and probative information concerning such deficiency in addition to such information return".  Respondent's submission in support of his motion does rely on information returns, but not solely on those information returns.  Rather, respondent obtained and submitted payroll information from IBM and Candle Corporation, and Mr. Ulloa did not dispute its authenticity or accuracy.

the imposition of an addition to tax or penalty is appropriate in a given case. Once the Commissioner meets this burden, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Rule 142(a); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001).

### 1. Section 6651(a)(1)

The notices of deficiency also reflect the determination of additions to tax under section 6651(a)(1) for Mr. Ulloa's failure to file his income tax returns when due. Section 6651(a)(1) authorizes the imposition of an addition to tax for failure to file a timely return unless the taxpayer proves that such failure was due to reasonable cause and was not due to willful neglect. See <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985). Respondent met his burden of production under section 7491(c) by showing that Mr. Ulloa's only "returns" were not returns at all but were lists of zeroes. To determine whether a taxpayer has filed a valid tax return, we follow the test enunciated in <u>Beard v. Commissioner</u>, 82 T.C. 766, 777 (1984), affd. 793 F.2d 139 (6th Cir. 1986), under which, "First, there must be sufficient data to calculate tax liability; second, the document must purport to be a return; third, there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and fourth, the taxpayer must execute the return under penalties of perjury." Mr. Ulloa's zero returns fail at least two of these tests: His

zero returns do <u>not</u> have "sufficient data to calculate a tax liability", and they do <u>not</u> constitute "an honest and reasonable attempt to satisfy the requirements of the tax law". On the contrary, they omit his income entirely. His documents constitute some sort of a protest against the tax law, not an attempt to comply with it. See <u>Cabirac v. Commissioner</u>, 120 T.C. 163, 169 (2003) ("The majority of courts, including this Court, have held that, generally, a return that contains only zeros is not a valid return"). Mr. Ulloa did not file a valid return for any of the years in issue. Therefore, the failure-to-file additions to tax will be sustained.

### 2. Section 6651(a)(2)

Section 6651(a)(2) imposes an addition to tax "[i]n case of failure * * * to pay the amount shown as tax on any return". This addition does not accrue unless a tax amount is "shown on" a return, so the Commissioner must introduce evidence that the tax was shown on a Federal income tax return to satisfy his burden of production under section 7491(c). <u>Cabirac v. Commissioner</u>, <u>supra</u>. When a taxpayer has not filed a return, the section 6651(a)(2) addition to tax may be imposed if the IRS prepared a substitute for return (SFR) that meets the requirements of section 6020(b). <u>Wheeler v. Commissioner</u>, 127 T.C. 200, 208-209 (2006), affd. 521 F.3d 1289 (10th Cir. 2008). The statute provides:

SEC. 6020(b).  Execution of Return by Secretary.--

>    (1)  Authority of Secretary to execute return.--If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

>    (2)  Status of returns.--Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

In this case, the IRS has shown the preparation of SFRs that were made from the information the IRS obtained and were subscribed by an IRS employee as agent of the Secretary.  Respondent has met his burden of production, and the additions to tax under section 6651(a)(2) will therefore be sustained.

### 3.  Section 6654(a)

Because Mr. Ulloa sometimes claimed exemption from withholding and at other times claimed numerous "allowances" to reduce his withholding, his tax was substantially underwithheld. Section 6654 imposes an addition to tax on an individual taxpayer who underpays his estimated tax.  A taxpayer has an obligation to pay estimated tax for a particular year if he has a "required annual payment" for that year.  Sec. 6654(d).  A "required annual payment" is defined in section 6654(d)(1)(B) as:

the lesser of--

>    (i)  90 percent of the tax shown on the return for the taxable year (or, if no return is filed, 90 percent of the tax for such year), or

> > (ii) 100 percent of the tax shown on the
> > return of the individual for the preceding taxable
> > year.
>
> Clause (ii) shall not apply if * * * the individual did
> not file a return for such preceding taxable year.

Thus, the Commissioner's burden of production under section 7491(c) requires him to produce, for each year for which the addition is asserted, evidence that the taxpayer had a required annual payment under section 6654(d); and in order to do so he must demonstrate the tax shown on the taxpayer's return for the <u>preceding</u> year, unless he can show that the taxpayer did not file a return for that preceding year. <u>Wheeler v. Commissioner</u>, <u>supra</u> at 210-212.

For 2002--i.e., the "preceding taxable year" for taxable year 2003--the transcript submitted with respondent's motion appears to show that a return <u>was</u> filed, and for purposes of Rule 121 we therefore assume that Mr. Ulloa filed a 2002 return. On that assumption, in order to obtain summary judgment as to the section 6654(a) addition for 2003, respondent was obliged to show under section 6654(d)(1)(B) a "required annual payment" consisting of "the lesser of * * * 90 percent of the tax" for 2003 or "100 percent of the tax shown on the return" for 2002. The codes and amounts on the transcript may reflect the amount of tax shown on Mr. Ulloa's 2002 return, but we cannot interpret the coded transcript with any confidence. Factual inferences must be

drawn in the manner most favorable to the party opposing summary judgment, and in that light we are unable to complete this computation.[12]  There is therefore a genuine issue of material fact as to the $223.10 addition to tax under section 6654 for 2003, and respondent's motion will be denied in that respect. The section 6654 addition to tax for 2003 will therefore proceed to trial or other disposition.

However, we have already found that Mr. Ulloa's zero returns for the taxable years 2003 through 2006 were not qualifying tax returns, so for the second, third, and fourth of those years-- 2004, 2005, and 2006--respondent has shown for each year that Mr. Ulloa did not file a return for the preceding year. Consequently, respondent has carried his burden of production under section 7491(c) with respect to the section 6654 addition for 2004, 2005, and 2006.

---

[12]See Barnes v. Commissioner, T.C. Memo. 2010-30 (slip op. at 13-16) ("notably absent from the array of documents attached to respondent's motion for summary judgment is a Form 4340, Certificate of Assessments, Payments, and Other Specified Matters.  * * *  Unlike many of the printouts from respondent's computer system that were attached to respondent's motion for summary judgment, a Form 4340 is normally a readable and understandable history of transactions and events concerning a taxpayer's account for a particular taxable period.  * * *  The Chief Counsel for the IRS recognized this and has instructed his attorneys as follows:  'A certified copy of an updated Form 4340 transcript should also be submitted with all summary judgment motions'" (quoting Chief Counsel Notice CC-2009-010 (Feb. 13, 2009))).

The section 6654 addition to tax is mandatory unless the taxpayer can place himself within one of the computational exceptions provided for in subsection (e) thereof. Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). Mr. Ulloa has not made any showing that any of the computational exceptions to section 6654 applies. Accordingly, we will grant summary judgment to respondent on the issue of Mr. Ulloa's liability for the addition to tax under section 6654 for the years 2004, 2005, and 2006.

IV. Penalty Under Section 6673(a)

Section 6673(a)(1) authorizes the Tax Court to impose a penalty not in excess of $25,000 whenever it appears that proceedings have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceeding is frivolous or groundless. A position maintained by the taxpayer is "frivolous" where it is "contrary to established law and unsupported by a reasoned, colorable argument for change in the law." Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986); see also Hansen v. Commissioner, 820 F.2d 1464, 1470 (9th Cir. 1987) (section 6673 penalty upheld because taxpayer should have known claim was frivolous). The statute grants the Court discretion in deciding whether to impose the penalty. See Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 102 (2000), affd. 299 F.3d 221 (3d Cir. 2002).

Respondent proposes that we impose such a penalty on Mr. Ulloa. We will do so. Mr. Ulloa's position is indeed frivolous, as we showed above in part II, and he persisted in maintaining that position after he was warned of the section 6673 penalty not only by his opponent's summary judgment motion but also by the Court, both in its order of December 14, 2009, and in the telephone conference on January 5, 2010. We will impose a penalty of $5,000.[13]

It is true, as Mr. Ulloa urged four times in his motion papers, that he is "not schooled in the law".[14] He makes this assertion to request a benefit (the "indulgence" of the Court), but in fact it is detrimental to him here. Mr. Ulloa truly is not schooled in the law, but his admitted awareness of this fact did not cause him to show any reserve or caution in making and

----

[13]Mr. Ulloa's liability for the penalty for maintaining a frivolous position is unaffected by our inability to resolve the estimated tax addition to tax under section 6654 for 2003. Docket No. 2053-09 will remain open pending resolution of the section 6654 addition for 2003. On the other hand, we resolve docket No. 4514-09 today; and while we could impose the penalty in both cases, we will exercise our discretion and require Mr. Ulloa to pay a $5,000 penalty in docket No. 4514-09 only.

[14]In this connection Mr. Ulloa cites Haines v. Kerner, 404 U.S. 519 (1972), without explanation. That case involved a motion under Fed. R. Civ. P. 12(b)(6) to dismiss a petition for failure to state a claim. The petition had been filed by a pro se prisoner, and the Court observed that "the allegations of the pro se complaint" are held "to less stringent standards than formal pleadings drafted by lawyers". Id. at 520. It so held for purposes of determining whether the petition stated a cause of action. It certainly did not hold that pro se litigants enjoy an immunity from sanction when they make frivolous arguments.

defending his arguments, and it evidently has not made him receptive of any schooling in the law. Rather, despite his admitted ignorance, he is uncurious about contrary authority, scornful of opposition, and dismissive of correction.

Moreover, a lack of sophisticated knowledge of the law is not really what makes Mr. Ulloa's case problematic. Rather, at the level of mere common sense, his principal argument (i.e., that "the United States" includes none of the States) is radically counter-intuitive. His reasoning, if it can be called reasoning, bears a fallacy (i.e., that "includes" means "includes only") that is obvious to anyone fluent in English. Mr. Ulloa concluded that he owes no Federal income tax because neither he nor his payers resides in Puerto Rico, the Virgin Islands, Guam, or American Samoa; he must have noticed that this conclusion would apply equally well to all of his neighbors and fellow employees; yet most of them pay their taxes every year.

The Tax Court is fully accustomed to--and fully accommodating of--taxpayers who are not "schooled in the law" but must represent themselves. The Court reads their pleadings by "less stringent standards", Haines v. Kerner, 404 U.S. 519, 520 (1972); the Court works to assure that a petitioner's ignorance of law or procedure does not result in an unjust decision; the Court does not penalize good-faith errors. This case, however, involves not a good-faith error but a wildly improbable position

that Mr. Ulloa must have known was frivolous.  Mr. Ulloa ignored warnings from the Court that his position was frivolous (instead determining, he said, that the Court must be "biased") and stubbornly persisted in that frivolous position.  The penalty of section 6673 is designed to address petitioners who conduct themselves in this manner.

To reflect the foregoing,

<u>An appropriate order will be issued in docket No. 2053-09</u>.

<u>An appropriate order and decision will be entered in docket No. 4514-09</u>.